MEINECKE, Appellant, vs. SMITH, Respondent.

*March 10—March 31, 1908.*

*Contract: Construction: Right of way: Misuser: Injunction: Damages for failure to repair.*

1. A grant of a right of way should be construed with reference to the condition and state of the premises at the time the grant is made, and a court, if necessary, will put itself in the place of the parties and read the instrument in the light of the circumstances surrounding them at the time it was made.

2. By mutual agreement between plaintiff and defendant the former granted to the latter "a purely personal license to cross to and fro across" plaintiff's land, "for his own personal use and in pasturing of stock and in getting to and from certain lands owned by" defendant "and held by him for farming and pasturage purposes." In an action in equity to restrain defendant from using the road for hauling sand from a pit discovered and developed two years after the *license was granted*, *held*, (1) that the clause "held by him for farming and pasturage purposes" was a limitation on the right to use the way, and not merely descriptive of defendant's premises, and defendant, therefore, had only a license for his own personal use in pasturing stock and getting to and from his lands for farming and pasturage purposes and not for hauling sand; (2) that under the contract and the evidence defendant acquired no interest in the land over which the road passed.

3. Under a contract granting to defendant a right of way over plaintiff's land defendant was to pay one half the cost of building the road. In an action to restrain defendant from making an unauthorized use of the way, a claim for damages for defendant's failure to pay his part of the cost of constructing the road having no legal connection with the equitable cause of action sued upon, testimony offered to establish it should have been excluded.

APPEAL from a judgment of the circuit court for Monroe county: J. J. FRUIT, Circuit Judge. *Reversed.*

The complaint in this action alleges, in effect, the owner-ship of certain lands by plaintiff, and that on the 25th day of May, 1903, plaintiff and defendant entered into an agree-ment, by the terms of which plaintiff for a valuable consid-eration gave to defendant a right of way across said lands. The agreement between the parties contained the following provision:

"Therefore it is mutually agreed by and between the said parties hereto that the said first party hereby gives to said second party a purely personal license to cross to and fro across said entire strip of lands above mentioned for his own personal use and in pasturing of stock, and in getting to and from certain lands owned by said second party and held by him for farming and pasturage purposes, with the express agreement and understanding that such right is purely a per-sonal license only, and is to cease immediately upon the death of said second party, and is not assignable or transferable by him or his heirs to any person or company or corporation whatsoever."

The complaint alleges that as a consideration for the agree-ment it was provided by the contract that the plaintiff should furnish certain material to be used in the construction of such right of way, and that plaintiff and defendant should each perform one half of the labor necessary to construct a roadway, the defendant to furnish at his own expense all brush, logs, and earth for said roadway; that the defendant refused and neglected to perform on his part; that plaintiff was compelled to construct said roadway at an expense of $150, and that defendant only expended $10; that plaintiff, notwithstanding defendant's failure to comply with the agreement, permitted him to pass over said road for farm-ing and pasturage purposes, but defendant opened a sand pit on lands occupied by him and reached by said road and hauled loads of sand over the same, and threatens to con-

tinue to do so against the protest of plaintiff, which said use for hauling sand has destroyed said road and put plaintiff to great expense and trouble in restoring the same for use by plaintiff, and that plaintiff will be greatly damaged thereby in the sum of $200; that defendant is without visible means by which to respond in damages. The complaint contains the following prayer:

"Wherefore plaintiff prays that defendant may be barred and foreclosed of any and all rights under said written license by reason of the nonperformance by him of the conditions thereof, and that said defendant be forever enjoined and restrained from hauling sand or other heavy loads, not connected with husbandry, over said road, and that plaintiff may have judgment against said defendant for his damages already done and for his costs."

Temporary injunction was applied for and denied.

Defendant answered, admitting that the parties entered into the contract and that plaintiff was the owner of the lands described in the complaint, admitted that the agreement was based upon a sufficient consideration, and denied generally the other material allegations of the complaint.

The court found that plaintiff and defendant entered into the agreement on the 21st day of May, 1903; that afterwards plaintiff and defendant built upon the lands referred to in the agreement a road about two rods wide leading to a tract of land consisting of 103 acres owned and occupied by defendant; that prior to the execution of said contract defendant purchased a strip of land for the use of plaintiff and defendant over which a part of said road was to be built, and the title was taken in the name of defendant for convenience, each party paying one half the consideration thereof and owning an undivided one-half interest thereof; that the evidence shows that the phrase in said instrument reading, "and held by him for farming and pasturage purposes," was not intended to be a limitation of the right of

defendant to use said road, but was intended only to describe the premises to which said road was to run; that it
was the intention of the parties that plaintiff should use
said road in such manner as he saw fit in going to and from
a certain slaughter house owned by him, and that defendant
should have the right to use said road himself, his agents
and servants in going to and from said tract of land owned
by him, consisting of 103 acres, for hauling sand and for
such other purposes as might be to his interest in the occupancy of said tract, and said right of way was not limited
strictly to agricultural and farming purposes; that it was
the intention of said parties by said instrument to create an
interest in the land over which said road runs, and said right
was to remain in defendant personally until his death; that
after completion of said road the same was used by defendant in hauling hay, manure, wood, grain, and sand, and in
driving cattle to and from said 103 acres; that said defendant has not permitted others, except his agents and servants,
to use said road, and that said road has not been impaired or
damaged by hauling loads thereover, and that the material
allegations of the complaint are not proved by the evidence.

The court found, as conclusions of law, that the phrase in
said instrument, "and held by him for farming and pasturage purposes," is descriptive of the lands, and is not a limitation of the right of defendant to use said road; that said
defendant under the agreement has the personal right to
use the road in hauling sand and in such other manner as
may be to his benefit in the occupancy of said 103 acres,
and said right can be exercised by the servants and agents
of defendant; that said contract created an interest in the
lands over which said road runs in favor of defendant, and
the right to use said road continues in him personally until
his death, and that the case of the plaintiff is without equity
and should be dismissed.

Judgment was entered dismissing the complaint and

awarding costs to defendant. Due exceptions were taken to the findings, and plaintiff appeals from the judgment.

For the appellant there was a brief by *Graham & Graham* and *Naylor & McCaul,* and oral argument by *W. B. Naylor* and *John G. Graham.*

For the respondent there was a brief by *Masters, Graves & Masters,* and oral argument by *R. B. Graves.*

KERWIN, J.   The proper construction of the contract referred to in the statement of facts is the main question for consideration here. The action is in equity to restrain the use of the road for hauling sand from a pit discovered and developed some two years after the contract was made and for other relief. It is claimed on the part of appellant that the use of the road for other than farming and pasturage purposes is improper and unauthorized under the terms of the contract, while on the part of the respondent it is insisted that the contract gives him the right to use the road in any manner he sees fit, and therefore the use he made of it himself, his servants and agents in hauling sand for sale and such other purposes as might be to his interest in the use and occupancy of his land was authorized under the contract. We have been able to find little by way of adjudicated cases which afford assistance in construing the contract. We are therefore forced to construe it with the aid of such light as may be gathered from its terms and the situation of the parties when it was made. As before observed, when the contract was made and for about two years thereafter it was not known that a sand pit existed upon the premises of defendant to which the right of way led. The land was used for farm and pasturage purposes, and the use for hauling sand over the road by defendant could not have been in the contemplation of the parties when the contract was made. This fact is important in construing the contract. A grant of a right of way should be construed

with reference to the condition and state of the premises at the time the grant is made. *Cahill v. Layton,* 57 Wis. 600, 16 N. W. 1. And a court will, if necessary, put itself in the place of the parties and read the instrument in the light of the circumstances surrounding them at the time it was made. *Merriam v. U. S.* 107 U. S. 437, 441, 2 Sup. Ct. 536.

The question, therefore, arises whether, in the light of proper rules of construction, the terms of the contract are sufficiently broad to include such use. It is familiar law that in construing a contract the intention of the parties is to be gathered from the whole instrument and all parts of it, and all words therein will be given effect where this can be done without doing violence to any part of the agreement. 9 Cyc. 579. It is obvious from the words of the contract that the rights granted were quite strictly guarded. The right mentioned as given to defendant was "a purely personal license to cross to and fro across said entire strip of lands above mentioned for his own personal use and in pasturing of stock, and in getting to and from certain lands owned by said second party and held by him for farming and pasturage purposes." The court below found that the phrase in the contract, "and held by him for farming and pasturage purposes," was not intended as a limitation of the right of respondent to use said road, but was intended to describe the premises to which the road was to run. We do not think this is the true construction of the instrument. If these words be construed as descriptive of the premises they are surplusage, because the premises to which the road runs is well understood without them. Besides, the phrase could not in any way enlarge, limit, or qualify the instrument if treated as words of description. The tract over which the right of way extends is particularly described, and such description carries the right of way to the premises of defendant. But, regarding the words as words of limitation upon

the use, they have an important bearing and cannot be regarded as surplusage, since they can be read as a limitation on the use without doing violence to any part of the instrument. The contract, we think, rightly understood, merely gives the defendant a license for his own personal use in pasturing stock and getting to and from his lands for farming and pasturage purposes, and the court below was in error in holding that the phrase in question was not intended to be a limitation of the right of defendant to use the road, but only as descriptive of defendant's premises; therefore the respondent merely got a right of way for farming and pasturage purposes. Holding as we do on the construction of the contract, it seems clear that the use to which the road was put by defendant was an unauthorized one. *Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895; *Parks v. Bishop,* 120 Mass. 340; 14 Cyc. 1206. It has been held that a right of way for agricultural purposes is of a limited and qualified character and does not include the right to transport lime from a quarry. Washb. Easem. (4th ed.) 284 (*187).

The court below also found that the instrument in question created an interest in land over which the road runs and that said right was to remain in defendant until his death. We think in this finding the court was in error. There is no proof that any interest in the land upon which the road is located ever passed to the defendant. The instrument itself purports to give defendant no interest in the land; only a mere license to pass over it. *Lockhart v. Geir,* 54 Wis. 133, 11 N. W. 245; *Keystone L. Co. v. Kolman,* 94 Wis. 465, 69 N. W. 165. The finding to the effect that defendant has not permitted others except his agents and servants to haul sand upon said road is not material upon this appeal in view of the fact that he had no right himself to do the acts complained of. As to how far the defendant might take to his assistance his servants in using the road for authorized purposes under the contract we need not consider

Meinecke v. Smith, 135 Wis. 220.

here, since that question is not before us. He would doubtless be confined to the ordinary and usual use made of such road by a licensee for farming and pasturage purposes. The court below further found that the road had not been impaired or damaged by the hauling of sand or heavy loads thereover. It is claimed by appellant that this finding is not supported by the evidence. Upon this question we find the evidence conflicting, and after a careful reading of it we cannot say that the clear preponderance of the evidence is against the finding. The contract provides that each party shall contribute one half of the expense of building the road. Evidence was admitted under objection to the effect that the expense of building the road was $137.53 and that defendant paid of such expense only $10.50, leaving a balance on his share of $58.26. The claim, however, for this damage was a purely legal claim, having no legal connection with the equitable cause of action sued upon, and we think the testimony offered to establish it should have been ruled out. The court made no finding upon this question and evidently did not pass upon the plaintiff's right to recover for it; the theory of the court obviously being that the question was considered as relating to the equitable relief, if admissible for any purpose. The only theory upon which this balance could have been considered upon any aspect of the case would be on the ground of insolvency of defendant, and there is no evidence of insolvency. If the plaintiff has any claim for the alleged balance due he can pursue his remedy in an action at law.

It follows from what has been said that the judgment below must be reversed, and the action remanded with directions to render judgment in favor of plaintiff restraining defendant from using the road in question for hauling sand over it from the sand pit on defendant's premises, and from using said road otherwise than for farming and pasturage purposes.

*By the Court.*—It is so ordered.